## LOUISVILLE TRUST COMPANY *v.* COMINGOR.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 309.  Submitted April 29, 1901.—Decided January 27, 1902.

A general assignment for the benefit of creditors had been made under the statutes of Kentucky in that behalf and a suit involving the administration and settlement of the assigned estate was pending in the state Circuit Court, when a petition in bankruptcy was filed against the assignors, to which the assignee was made defendant, although no special relief was prayed for as against him, but an injunction was granted restraining all the defendants from taking any steps affecting the estate, and especially in the suit pending in the state court. The assignee had paid into court in that suit a considerable amount of money, which, on the trustee in bankruptcy becoming a party to the suit, had been paid over to him by order of the state court.

Rules were laid on the assignee by the referee in the bankruptcy proceedings to show cause why he should not pay over the sums of $3398.90 and of $3200, alleged to belong to the bankrupts' estate, in response to which the assignee showed as cause that he had paid the $3200 to counsel for services rendered to him as assignee, and had retained and expended the $3398.90 as his own commissions as such, all before the

Statement of the Case.

petition was filed, and he also, prior to the final order of the District Court, objected before the referee, and before the District Court, that he could not be proceeded against by summary process for want of jurisdiction. The rules were made absolute by the referee and the assignee ordered to pay over the two sums in question, and that action was affirmed by the District Court. *Held:* (1) That as to these sums the assignee asserted adverse claims existing at the time the petition was filed, which could not be disposed of on summary proceeding. (2) That the bare fact that the assignee was named as one of the defendants to the petition in bankruptcy did not make him a party to the bankruptcy proceedings for all purposes. (3) That in responding to the rules laid on him, the assignee did not voluntarily consent that he might be proceeded against in that manner, and that jurisdiction to do so could not be maintained.

DECEMBER 5, 1898, Simonson, Whiteson and Company, the firm consisting of three partners, made an assignment to Leonard Comingor for the benefit of their creditors, under the statutes of Kentucky in that behalf, and a few days thereafter Comingor brought suit involving the administration and settlement of the estate in the Circuit Court of Jefferson County.

The state statute provided, among other things, that the assignee should give bond with good security to be approved by the county judge, conditioned for the faithful discharge of his duties as assignee, and to be recorded in the county clerk's office; that the assignee should be at all times subject to the orders and supervision of the county court, or the judge thereof in vacation, except as thereinafter provided; for the final discharge of the assignee on due notice; and that the assignee or any creditor or creditors representing one-fourth of the liabilities might bring suit in the Circuit Court for the settlement of the estate, whereupon the jurisdiction of the county court should cease, and the Circuit Court should have all the power and authority to administer and settle up the assigned estate conferred on the county court, in addition to its power and authority as a chancery court. Kentucky Statutes, 1899, p. 202, c. 7.

Certain creditors filed a petition in the Circuit Court of the United States for the District of Kentucky in bankruptcy, on February 14, 1899, against the firm, to which its members tendered a plea and answer. The ground on which the petition was based was that Simonson, Whiteson and Company had within four months of the filing of the petition made a general

assignment under the statutes of Kentucky for the benefit of creditors to Comingor. The court adjudicated them bankrupts, 92 Fed. Rep. 904, and one of them prosecuted an appeal to the Circuit Court of Appeals for the Sixth Circuit, which, July 5, 1899, reversed the judgment with directions to take further proceedings. 95 Fed. Rep. 948.

On September 20, 1899, adjudication was again awarded, and on a second appeal was affirmed February 12, 1900. 100 Fed. Rep. 426.

Comingor was made a defendant to the petition in bankruptcy as assignee, but no relief was prayed as against him, and he moved the court to dismiss the petition as to him for want of jurisdiction, and also, without waiving the motion, tendered an answer but the motion was not acted on, nor was his answer filed.

April 1, 1899, an injunction was granted against Simonson, Whiteson & Company, and Comingor, from taking any steps affecting the bankrupts' estate, and especially in the action in the Jefferson Circuit Court.

May 17, 1900, the case was referred to a referee, who, on May 28, without notice entered an order that Comingor file with him an itemized and detailed statement, showing his receipts and disbursements of the money and other assets belonging to the estates of Simonson, Whiteson and Company and its members. This Comingor did, the statement showing that he had received $92,865.77; that he had disbursed $19,876.73; that he had paid his counsel $3200; that he had drawn as commissioner, $3300; that he had paid over to the receiver of the state court $59,623.61; and that he had on hand $6766.53. This sum of $6766.53 was subsequently paid the trustee in bankruptcy.

June 20, 1900, the referee on his own motion entered an order appointing the Louisville Trust Company, receiver, and directing it to apply to the Jefferson Circuit Court for an order directing the receiver of that court to pay over the entire fund in court, in Comingor's action there; but providing that the Trust Company should not appear in the Jefferson Circuit Court as a party to that action, nor receive any less sum than

the whole fund in that court.    Application was accordingly
made by the Trust Company, but the Jefferson Circuit Court
declined to entertain the motion to withdraw the funds, be-
cause the Trust Company was not a party to the action and
had no standing in court, but the circuit judge suggested that
when the Trust Company filed its petition asserting its claim to
the fund, as provided by section 29 of the Code of Kentucky,
the court would then be authorized to entertain such motions
and make such orders in its behalf as might be necessary and
proper.

The Trust Company appears to have been appointed trustee
by the referee June 30, 1900, its bond as such trustee being
then approved.

On the same day the referee entered an order that the Trust
Company file a petition to be made a party to the suit in the
Jefferson circuit court, and thereupon such petition was filed
by it as trustee, stating among other things that the officers of
the court had been paid in full and had no claims on the fund
in court, and that the fund, to wit, $46,305.03, belonged to the
creditors of the bankrupt concern and that nobody else had
any interest therein, neither officers, attorneys nor anybody
else, and praying that the court be directed to make the Trust
Company a defendant, and that its petition be taken as an an-
swer, and that the receiver of the said Circuit Court pay to pe-
titioner the said sum of $46,305.03, and "for all further and
proper relief."    The Jefferson Circuit Court thereupon entered
an order making the Trust Company a party defendant, and
directing that it be allowed to withdraw from the fund in court
the sum of $46,305.03.

June 20, the referee, on his own motion, entered an order re-
quiring Comingor and his counsel to appear and show cause
three days thereafter why they should not pay over to the re-
ceiver the amount of the commissions and fees.

June 23, Comingor responded as to the sum of $3398.90 that
he had retained the same on account of his commissions as as-
signee before any bankruptcy proceedings were had, and that
he relied on the fact that he would be entitled to more than
that sum on the final settlement; that for services rendered to

the estate he believed this court would allow at least said amount; that he was a person of no means; and had used said money from time to time, relying on the fact that it belonged to him, and he had none of it left; and that he was unable to pay said money into court, as he had no money or property of any kind.

The referee held the response insufficient, and made the rule absolute. The order to show cause made on the attorneys does not appear to have been pursued, but June 28, 1900, another order was made on Comingor to show cause why he should not be required to pay to the receiver the sums of money paid to them, amounting to $3200 in all.

June 30, 1900, Comingor responded that he had paid the $3200 to his attorneys for services rendered him as his counsel while acting as the assignee before any proceedings in bankruptcy were taken. He further alleged that he had no money or means of any kind with which to pay, and referred to his former response and made it a part thereof, and insisted that he ought not to be compelled to pay the amount claimed.

The referee adjudged this response insufficient, and made the rule absolute.

Comingor then prayed for a review by the District Court in bankruptcy of the orders adjudging his responses insufficient, and ordering him to pay to the receiver the sums of $3398.90 and $3200 respectively.

The referee reported his findings to be that Comingor was entitled to no compensation whatever, and that he had no legal right to pay attorney's fees when no allowance had been made by the state court therefor, and that in contemplation of law he must be deemed to have the funds in his possession.

The District Judge referred the matter back to the referee July 16, 1900, to take testimony as to the character and value of Comingor's services and those of his counsel. The referee proceeded to do this, pending which, on November 10, Comingor tendered an amended response before the referee, setting forth that, as was shown by the pleadings, records and evidence in the case and the entire proceedings had, neither that court nor the referee in bankruptcy had any jurisdiction, either of the

respondent or the matter involved; to make any such orders or require respondent to answer thereto, because the records showed that all the transactions in reference to the two sums of money took place before the petition in bankruptcy was filed, and that neither that court nor the referee in bankruptcy could proceed against respondent as attempted by order or rule to pay over or by summary process. He prayed that the rule be discharged and the orders to pay be set aside. This amended response the referee declined to entertain, and it was again tendered in the District Court on the filing of the referee's report.

December 11, 1900, the referee reported the evidence and his conclusions thereon, that neither Comingor nor his attorneys had rendered any services of value to the estate, and that their services had in fact been injurious to the creditors, but that the fees paid to the attorneys were usual and reasonable according to the scale of compensation allowed for such services by the state court in Louisville.

The District Judge confirmed the report of the referee, and as to the objection of want of jurisdiction, held that it could not be entertained by the court for the reason that, by long acquiescence in that mode of procedure, respondent must be regarded as having consented thereto. Thereupon an order was entered dismissing the petition for review, and adjudging that Comingor pay to the Trust Company, as trustee, the said sums of $3398.90 and $3200, on or before February 16, 1901, to all of which Comingor excepted, and filed his petition for review in the Circuit Court of Appeals for the Sixth Circuit. That court entered an order staying proceedings in the District Court, and thereafter on hearing reversed the decree of the District Court affirming the orders of the referee requiring Comingor to pay to the trustee the sums aforesaid, with directions to set aside its order and decree, and the orders of the referee directing Comingor to pay the trustee in bankruptcy the moneys mentioned in said orders. 107 Fed. Rep. 898.

Certiorari from this court was then granted. 181 U. S. 620.

*Mr. Augustus E. Willson* for the Trust Company.

*Mr. Alexander Pope Humphrey, Mr. Morris A. Sachs, Mr. D. A. Sachs, Mr. J. G. Sachs* and *Mr. W. M. Smith* for Comingor.

Mr. CHIEF JUSTICE FULLER, after making the above statement, delivered the opinion of the court.

The Circuit Court of Appeals was called on to review the orders of the referee as confirmed by the District Judge, by which Comingor was required to pay over the sums of $3398.90 and $3200, respectively, and the recommendation that he be dealt with for not complying therewith.

On the face of his responses, from first to last, it appeared that Comingor insisted that the $3200 had been paid by him to his counsel while they were acting for him, before the bankruptcy proceedings were commenced, for professional services rendered to him as assignee; and that he had retained and expended the $3398.90 as his commissions as assignee in reliance on the belief that he was entitled to that amount on final settlement. He thus asserted a claim to each of these sums adversely to the bankrupt, and as outstanding when the petition in bankruptcy was filed, and these claims were in fact passed upon by the referee and the District Judge as being adverse. This brought the controversy within the ruling in *Bardes* v. *Bank*, 178 U. S. 524, and the questions attempted to be litigated before the referee and in the District Court as to the allowance of the two amounts could only be raised in the District Court by consent, and then only by plenary suit. If the jurisdiction of the District Court was not consented to, then the state court, under the circumstances of this case, was the proper forum, and the matters in dispute were to be disposed of there.

The District Court held that Comingor had voluntarily accepted its jurisdiction, and that he had also consented that the court might proceed against him summarily. As the Circuit Court of Appeals said, speaking through Severens, J., " It was upon the ground of the petitioner's implied consent to the mode adopted that the District Judge justified it."

So far as this view rested on the contention that as Comin-

gor was joined with the bankrupts in the petition for adjudication, he therefore continued to be subject to the orders of the court without other process, we agree with the Circuit Court of Appeals that it cannot be sustained. As we understand the record, the petition in bankruptcy set up no cause of action and prayed no special relief against Comingor, and he was apparently made a defendant because adjudication would put an end to further action by him as assignee. Clearly, as the Circuit Court of Appeals points out, it would be inadmissible to permit creditors to deprive an assignee of his right to have his claims adjudicated by the proper court and in the customary mode of proceeding, by the device of making him a party to the petition for an adjudication and so attempting to bring him into the case for all purposes. Nor in this matter was any petition by the trustee, or by any other person, filed against Comingor to recover these sums, and the orders were entered by the referee on the record as it stood, so that there was no pretence whatever of a plenary suit in that court, in form or in substance.

The proceeding was purely summary. The determination of the merits on the facts was not open to revision by appeal or writ of error under the bankrupt law. If Comingor had been entitled to a trial by jury, he could not have obtained it as of right. The collection of the amounts found due would be enforcible not by execution but by commitment.

"We think that it could not have been the intention of Congress thus to deprive parties claiming property, of which they were in possession, of the usual processes of the law in defence of their rights." *Marshall* v. *Knox*, 16 Wall. 556 ; *Smith* v. *Mason*, 14 Wall. 419.

The question is whether the District Court had jurisdiction to finally adjudicate the merits in this proceeding.

We have just held in *Mueller* v. *Nugent, ante,* 1, that the District Court has power to ascertain whether in the particular instance the claim asserted is an adverse claim existing at the time the petition was filed. And according to the conclusion reached the court will retain jurisdiction or decline to adjudicate the merits. Jurisdiction as to the subject matter may be

limited in various ways, as to civil and criminal cases; cases at common law or in equity or in admiralty; probate cases, or cases under special statutes; to particular classes of persons; to proceedings in particular modes; and so on. In many cases jurisdiction may depend on the ascertainment of facts involving the merits, and in that sense the court exercises jurisdiction in disposing of the preliminary inquiry, although the result may be that it finds that it cannot go farther. And where in a case like that before us, the court erroneously retains jurisdiction to adjudicate the merits, its action can be corrected on review.

We are of opinion that even if Comingor could have consented to be pursued in this manner, he did not so consent. He was ruled to show cause, and the cause he showed defeated jurisdiction over the subject matter, that is jurisdiction to proceed summarily. He did not come in voluntarily, but in obedience to peremptory orders, and although he participated in the proceedings before the referee, he had pleaded his claims in the outset, and he made his formal protest to the exercise of jurisdiction before the final order was entered. He had been restrained from settling his accounts in the state court in the action pending there, and the District Court, instead of dissolving the injunction, declining jurisdiction, and leaving the litigation to the state court, either in due course, or by plenary suit, adjudicated the merits and entered a peremptory order that he should pay over, disobedience of which order was punishable by commitment. We think that in this there was error, and that the Circuit Court of Appeals was right in its decree of reversal.

*Decree affirmed.*

Mr. Justice Harlan dissented.