## In re TESCHMACHER & MRAZAY.

(District Court, E. D. Pennsylvania. February 29, 1904.)

### No. 1,848.

**1. BANKRUPT—BANKRUPT'S PROPERTY—RECOVERY—SUMMARY PROCEEDING—JURISDICTION.**

Where a third person claims property alleged to belong to a bankrupt, a court of bankruptcy has only jurisdiction to inquire summarily as to whether the property is held by the person in possession as the bankrupt's agent, or mere representative; and if, on such inquiry, the court is satisfied that a real adverse claim exists, such claim must be determined in a plenary suit in the state or federal court.

**2. SAME—JURISDICTION—CONSENT.**

Bankr. Act Feb. 5, 1903, c. 487, § 8, cl. "b," 32 Stat. 798 [U. S. Comp. St. Supp. 1903, p. 413], providing that suits by trustees shall only be brought or prosecuted in the court where the bankrupt whose estate is being administered by such trustees might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant, except suits for the recovery of property, under section 60, subd. "b," and section 67, subd. "e," applies only to plenary actions by trustees or a receiver, and does not authorize a third party, claiming property alleged to belong to the bankrupt, adversely, to confer jurisdiction on the court of bankruptcy by consent, to determine such adverse claim in a summary proceeding after the court had determined that the claimant was not a mere representative of the bankrupt.

In Bankruptcy.

Greenwald & Mayer and James F. Campbell, for petitioning creditors.

Furth & Singer and Frederick Beyer, for claimant.

J. B. McPHERSON, District Judge. The act of bankruptcy charged in the creditors' petition is the transfer, by bill of sale and actual delivery, of the stock and book accounts of a fur store to Andrew Gerenday, the son-in-law of one of the bankrupts, with intent to hinder,

delay, and defraud creditors; or, in the alternative, the transfer of the stock and accounts while the bankrupts were insolvent, with intent to give Gerenday a preference. The transfer was made on December 31, 1903, and the petition in bankruptcy was filed on January 15. Three days later a restraining order was issued, after notice to Gerenday, forbidding him to dispose of the goods that were the subject of the bill of sale, and permitting him to move for a dissolution of the order on January 20. On that day the creditor who had applied for the restraining order and Gerenday both appeared by counsel, and consented at the bar of the court to the appointment of a special referee, who was thereupon directed, as the record states, "to take the testimony of the bankrupt, and such other witnesses as may be called before him by the petitioning creditors, upon all matters relating to the subject-matter of this petition, and report the same to the court." The record of the order is defective, however, because it does not contain a recital that the order was made after counsel for the respective parties had been heard and consented thereto, and because, further, it does not contain a direction to the referee to hear such witnesses as might be called before him by Gerenday as well as by the petitioning creditors. But as the facts that the order should have contained this recital and this direction, and that these omissions were merely inadvertent, are within my official knowledge, I shall direct the order to be amended so as to set forth what actually took place. The referee began to take testimony under his appointment, and several meetings had been held, when Gerenday apparently changed his mind about the desirability of the reference, for on February 5 he moved to dissolve the restraining order; averring as follows in the petition now under consideration:

"That on the 15th day of January, 1904, when the involuntary petition in bankruptcy was filed against the above-named firm of Teschmacher & Mrazay, and for a long time prior thereto, I, the said Andrew Gerenday, was in the sole, uncontrolled, and exclusive possession and ownership of all the goods and merchandise in the premises No. 1217 Walnut street and No. 117 South Eleventh street, in the city of Philadelphia, state of Pennsylvania.

"That I, the said Andrew Gerenday, became the owner of said merchandise in good faith and for valuable consideration.

"That my ownership, possession, and control of said goods and merchandise is adverse against the whole world, and for the sole and exclusive benefit and enjoyment of myself, and not as agent, or for the benefit, interest, or enjoyment, of any other person or persons whomsoever, and that no person other than myself is in any wise interested, directly or indirectly, therein; that I, the said Andrew Gerenday, am not a party to the bankruptcy proceedings, do not desire to become a party thereto, and do most respectfully aver that I cannot be lawfully made a party thereto.

"I deny the jurisdiction of your honorable court in the making of the decree or restraining order served on me, or in permitting the same to further continue, or in any wise to have my title to said goods and merchandise attacked or inquired into in said bankruptcy proceedings, or in any manner other than a direct proceeding wherein the person or persons who proceed to attack my title thereto shall be put under proper and sufficient bond to respond in damages, so that my rights may be protected and adjudged according to the due processes of law, which are my constitutional rights."

Laying aside for the moment the effect of Gerenday's consent to the reference, I may say at once that I have examined the testimony taken before the special referee, and am of opinion that it sufficiently dis-

closes a real claim of adverse interest, although the interest may, perhaps, be based upon a voidable, or even upon a fraudulent, transaction. As I understand the decisions of the supreme court in Bardes v. Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175, Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, Louisville Trust Co. v. Comingor, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413, Jaquith v. Rowley, 188 U. S. 620, 23 Sup. Ct. 369, 47 L. Ed. 620, and other decisions cited in those cases, a court of bankruptcy, before the amendments of 1903 were passed, had jurisdiction to inquire summarily, upon petition and answer, whether property alleged to belong to the bankrupt, but found in the possession of a third person when the petition was filed, was held by such person as the bankrupt's agent or mere representative; and, in the exercise of this jurisdiction, the court was, of necessity, empowered to inquire to some extent concerning the merits of the claim of title, or of a right to retain possession, that might be set up by the person in whose hands the property was found. If the result of the inquiry was to satisfy the court that a real adverse claim existed—no matter how ill supported it might appear to be—the court had no power to go further in that form of proceeding, and decide summarily the question whether or not the claimant was entitled to prevail. It then became necessary—because the bankrupt act so declared—to remit the contestants to a plenary suit, either in a state court or in a circuit court of the United States—whichever might prove to be the appropriate tribunal. In either forum, however, the dispute was to be conducted by a plenary suit, and not in a summary fashion. The amendments of 1903, as I understand their scope, have made at least one change in these rules. They have conferred jurisdiction upon the district court to entertain some of the plenary suits which theretofore could only have been brought in a state court or in the circuit court, but the other rules of procedure laid down by the supreme court are still to be followed. The district court, sitting as a court of bankruptcy, may still inquire summarily concerning the ownership of property alleged to belong to the bankrupt, although it be found in the possession or custody of a third person. But, if the court should discover that such person is holding the property under a real claim of title or right of possession, and is not merely the alter ego of the bankrupt, it is still the duty of the court to desist from pursuing the summary remedy further, and to remit the contestants to a plenary suit, although the suit, instead of being brought in a state court or a circuit court of the United States, may now be brought in the district court itself, and may there be pursued to final judgment.

It follows, therefore, that as the testimony taken by the referee discloses that Gerenday is making a real, and not merely a colorable, claim to the ownership of the property in dispute, he is entitled to have his contention examined and judged according to the ordinary and regular process of the law, unless his consent to the summary proceeding before the special referee has bound him irrevocably to go on with it to the end. It is well settled that mere consent cannot give jurisdiction. Unless, therefore, the bankrupt act has conferred upon the district court the power to decide summarily between such adverse claims to property as are here presented, or has given the court such

power upon the consent of the claimant in possession, Gerenday's submission in the first instance was revocable at any time thereafter, and has now been validly withdrawn. As I have already pointed out, the bankrupt act does not give to the court the authority to decide summarily between such rights, and I think it is equally clear that the act has not given to the adverse claimant the power to consent to a summary proceeding for such a purpose. Of course, if he goes on with a summary proceeding to the very end, taking the chance of success, and only objects to the jurisdiction after a decision against him, the objection is not likely to receive much consideration, but a seasonable exercise of his right to object is entitled to protection. The only provision in the amended act upon the subject of consent, is Bankr. Act Feb. 5, 1903, c. 487, § 8, cl. "b," 32 Stat. 798, [U. S. Comp. St. Supp. 1903, p. 413], which reads as follows:

"Suits by the trustee shall only be brought or prosecuted in courts where the bankrupt whose estate is being administered by such trustee, might have brought or prosecuted them, if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant, except suits for the recovery of property under section 60 sub-division (b) and section 67 sub-division (e)."

Assuming for present purposes that, before a trustee has been appointed, a receiver or an interested creditor may bring the "suits" referred to by this clause, in order to protect the estate, I think it is clear that the language just quoted refers to plenary actions, whatever their form may be, and not to summary proceedings. The presumption is against a construction that would take away the ordinary rights of a litigant, would deprive him of trial by jury unless the court should grant it as a matter of grace, and might land him in prison for nothing more criminal than his conduct in accepting a preference.

In accordance with these views, the restraining order is dissolved, and the special referee is discharged from further consideration of this matter. But, in order that the controversy about Gerenday's title may be promptly disposed of, if a receiver has authority to raise the question at all, I will entertain an application for the appointment of a receiver, in order that action may be taken at once, without waiting for what may be the somewhat tardy appointment of a trustee.

The clerk is also directed to amend the order of January 20 so as to read that the appointment of the referee was made after hearing the arguments of counsel, and upon their consent, and also that the referee was directed to hear such evidence as might be offered by Gerenday, as well as by the petitioning creditors.